IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 3:24-cv-00377

JOHN A. RUSSO, JR.,

   Plaintiff,

v.

AMAZON.COM, INC. (D/B/A AMAZON),

   Defendant.

COMPLAINT
(Jury Trial Demanded)

NOW COMES Plaintiff, JOHN A. RUSSO, JR., by and through the undersigned counsel of record, complaining of Defendant, AMAZON.COM, INC., alleges and says unto this Court:

## I.    NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race. Plaintiff, John A. Russo, Jr., (hereinafter "Plaintiff"), brings this action to remedy discriminatory employment practices of his employer, Amazon, Inc., (hereinafter "Defendant"). Plaintiff alleges that Defendant discriminated against him based on his race, and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. This Complaint sets out in detail the relevant instances of unlawful discrimination perpetrated by Defendant.

## II.    PARTIES AND JURISDICTION

1. Plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

2. At all times relevant herein, Plaintiff is a citizen and resident of North Carolina.

3. At all times relevant herein, Plaintiff was an employee of Defendant within the meaning of 42 U.S. Code § 2000e(f).

4. At all times relevant herein, Defendant was an employer of Plaintiff within the meaning of 42 U.S. Code § 2000e(b), engaged in industry affecting commerce employing more than 15 (fifteen) employees.

5. Defendant is a multi-national corporation, incorporated with registered office, in Delaware, at 251 Little Falls Drive, City of Wilmington, County of New Castle, DE, 19808. The name of the registered agent at such address is the Corporation Service Company. Defendant is headquartered in Seattle, WA, at 410 Terry Ave N, Seattle 98109, WA.

6. Plaintiff was employed by Defendant at Defendant's place of business, an "Amazon Fulfillment Center" or "Sortation Warehouse" located at 1805 TW ALEXANDER DR. Durham, North Carolina, 27703.

7. Federal jurisdiction is proper under both Federal Question Jurisdiction and Diversity Jurisdiction. Plaintiff brings this claim under federal statute, specifically 42 U.S.C. §§ 2000e, et seq, thereby satisfying the requirements outlined in *Osborn v. Bank of the United States,* 22 US 738 (1824), and 28 USC 1331. In the alternative, the Parties are also diverse. Plaintiff is a citizen of Charlotte, North Carolina, and Defendant is, for purposes of jurisdiction, domiciled and a citizen of Seattle, WA and Wilmington, DE. The amount in controversy is also above $75,000.00.

8. Defendant is subject to the personal jurisdiction of this Court as they purposely availed themselves of conducting activities within the State of North Carolina. Defendant operates and conducts business in a center located in Durham, North Carolina, and operates several other fulfillment centers throughout the State, and

thereby meets the minimum contacts standard set forth in *International Shoe Co. v. Washington. See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

### III.     STATEMENT OF FACTS

9. Plaintiff began working for Defendant in 2019, and Plaintiff's position at Defendant's warehouse was a Transportation Associate.

10. Plaintiff is a Caucasian male.

11. In August of 2022, employee of Defendant Randolph Takay approached Plaintiff and threatened to physically harm Plaintiff. Mr. Takay told Plaintiff that he would "kick [his] ass" four times during the conversation.

12. Mr. Takay proceeded to request another employee of Defendant, Tim Houston to "kick [his] ass" as well.

13. Mr. Takay is an African American male.

14. Plaintiff immediately report the incident to HR and filled out a written statement. Plaintiff met with employee Ashley Dae. Plaintiff explained that he has been singled out by Mr. Takay.

15. Instead of remedying the situation, Defendant employee Monica Duncan offered Plaintiff a lower pay and less-hour position as a Ship Clerk.

16. On August 15, 2022, Mr. Takay created a picture mocking Plaintiff about his complaints to HR and posted it to the employee chat room (See Attached Exhibit 1). The picture created by Mr. Takay depicts a man illustrating Mr. Takay and stating that he will "step on anybody [sic] necks that gets in our way."

17. In September of 2022, Mr. Takay again threatened Plaintiff and blocked the exit to a room.

18. Plaintiff informed his manager, Spencer Bennett about what had occurred.

19. At this time, the pictured threat of Mr. Takay seen in *Exhibit 1* remained in the chat, even after Plaintiff complained that it was targeted at him.

20. On September 29, 2022, Monica Duncan called Plaintiff into her office and proceeded to state that she did not believe Plaintiff's account of events. Plaintiff expressed that he was telling the truth and that all he wanted was to work free from intimidation under Amazon's "Code of Ethics Policies."

21. Ms. Duncan avoided the subject. When Plaintiff asked about the picture created threatening him, Ms. Duncan further avoided the subject.

22. On November 11, Plaintiff was called in for a virtual meeting with Ashley Dae and Shannon Privindiville. Ms. Dae stated to Plaintiff that his complaint "never happened."

23. When Plaintiff replied that the events *did* occur, Ashley Dae proceeded to call Plaintiff an **aggressive white person** (emphasis added) 4 different times on the call.

24. The call lasted 33 minutes. When Plaintiff brought up Mr. Takay's threatening picture, Ashley Dae lied and stated that she did not know about the meme even though she did. Thereafter, the meeting ended.

25. The meme was removed over one month later on December 17, 2022, not by the administration but by Mr. Takay.

26. On July 12, 2023, Mr. Takay went onto the walky-talky and told Plaintiff to "say it to my face" referencing the complaints Plaintiff had made to HR. Plaintiff complained further to his manager and HR.

27. On July 19, 2023, Mr. Takay asked his managers when they would be leaving, so that Mr. Takay could be alone with Plaintiff. When Plaintiff communicated this concern to

management, management lied and told Plaintiff they had put Mr. Takay in a different unit for that time. In- fact, they did not, evidenced by an assignment document.

28. Thereafter, Mr. Takay approached Plaintiff, and Plaintiff began recording Mr. Takay for his safety.

29. Mr. Takay was aggressive and began verbally assaulting Plaintiff to his face. Mr. Takay communicated threats to Plaintiff. Plaintiff's shift had ended at this time and Plaintiff removed himself from the situation and left work.

30. The following shift, on July 26, 2023, Mr. Takay proceeded to berate Plaintiff verbally. Mr. Takay stated over the radio: "We need to do something about Russo." This threat was not addressed by Defendant. Another co-worker, Antre Reid responded: "I know, we are working on it with HR to get him terminated."

31. On July 28, 2023, Plaintiff received a "safety hero of the month" award for his complaints, even though nothing had been done by Defendant to protect Plaintiff.

32. Despite all of the above encounters, Defendant did nothing to protect Plaintiff or remedy the situation. Instead, Defendant sought to continue to protect the aggressors and retaliated against Plaintiff for his complaints.

33. On August 3, 2023, Defendant informed Plaintiff that he would likely be terminated due to videotaping the violent encounter with Mr. Takay for Plaintiff's protection.

34. Thereafter, Plaintiff was terminated.

35. Plaintiff received an email from Scott Reams, Sr. HR Investigator for Defendant, stating that violations *had* been found regarding the situation with Mr. Takay, but nevertheless, nothing would be done to remedy Plaintiff's retaliatory termination.

36. Plaintiff appealed his termination shortly thereafter.

37. Defendant rescheduled the appeal hearing numerous times, gave Plaintiff conflicting dates, and sent incorrect information. For example, Defendant scheduled the appeal hearing for September 5 at 5PM. The hearing was then moved to September 9 at 2PM per email confirmation. Then, on September 8, Plaintiff received a notice that he forfeited his appeal rights by missing the appointment. When Plaintiff complaint further, Defendant instructed Plaintiff to "file an HR ticket." An appeal hearing was ultimately never given.

38. In sum, Defendant further retaliated against Plaintiff and made it near impossible for Plaintiff to appeal his wrongful termination.

39. Plaintiff then submitted a claim with the Equal Opportunity Employment Commission (EEOC) for violations of Title VII of the Civil Rights Act of 1964, on the basis of race and retaliation discrimination, Charge Number: 433-2023-03618, on December 26, 2023.

40. Plaintiff received a Right to Sue letter from the EEOC on January 14, 2024.

### a. **FIRST CAUSE OF ACTION**
(Race Discrimination)

41. The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated by reference as if fully set forth herein.

42. Title VII prohibits employment discrimination based on race: "It shall be an unlawful employment practice for an employer— (1) to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

43. In order to make a *prima facie* case for discrimination based on race under Title VII, a plaintiff can satisfy either the *direct evidence model* found in McCarthy v. Kemper Life Insurance Company, 924 F.2d 683, 686 (7th Cir. 1991), or the *circumstantial model* found in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d.

44. Under the direct evidence model, direct evidence, such as racially derogatory comments, is proof of discriminatory motive on part of employer. *Brewer v. Cabarrus Plastics, Inc., 130 N.C. App. 681, 686.*

45. Under the circumstantial model, Plaintiff must *demonstrate* "(1) the plaintiff is a member of a protected class; (2) the plaintiff has performed satisfactorily on the job; (3) the plaintiff suffered an adverse employment action; and (4) the treatment plaintiff was subjected to differed from similarly situated employees outside the protected class." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d.

46. In order to demonstrate a prima facie case of discrimination in discipline and/or discharge, a plaintiff must show that (1) "she is a member of a protected class;" (2) the "conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class;" and (3) "she suffered more severe discipline for her misconduct as compared to those employees outside the protected class." Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011)., *See, also* Lee v. AT&T Mobility Servs. LLC, 2013 U.S. Dist. LEXIS 45892, *14-15.

47. Here, Plaintiff can establish a *prima facie* case under the direct evidence model of discrimination:

    a. Plaintiff complained about his treatment by another employee to Defendant and a meeting was conducted to discuss the incidents.

    b. Defendant responded to Plaintiff's complaints for his safety by calling Plaintiff an "aggressive white person."

    c. Defendant stated that Defendant did not believe Plaintiffs complaints, and did nothing further to remedy the situation. Defendant ignored Plaintiff's

- 7 -

Case 3:24-cv-00377   Document 1   Filed 04/10/24   Page 7 of 11

complaints afterward, and allowed Plaintiff to be continually harassed and bullied by black co-workers of his.

d. In fact, Defendant's racially motivated comments and further inaction lead to an incident, which occurred where the aggressor placed hands on Plaintiff and threatened Plaintiff's life at Defendant's place of business.

48. Here, Plaintiff meet the elements outlined in *McDonnell* for a circumstantial *prima facie* case of discrimination:

a. Plaintiff is a member of a class that is protected from discrimination. Plaintiff alleges discrimination based on his race as Caucasian.

b. Plaintiff has performed satisfactorily at his job compared to other employees. Plaintiff has received praise from other co-workers for his work and even won safety hero of the month."

c. Plaintiff suffered an adverse employment action where Plaintiff was treated differently than other employees of different race. For example, Defendant did nothing to prevent the numerous and aggressive actions against Plaintiff (a Caucasian male) by Mr. Takay, an African American male. Mr. Takay was allowed to continue to "get away with" aggressive conduct with little to no repercussion. Mr. Takay was never terminated for his actions against Plaintiff such as *grabbing him* on the jobsite, *creating threatening pictures*, making *threatening comments*, and *harassing and intimidating Plaintiff* on numerous occasions, among numerous other actions. However, Plaintiff was terminated almost immediately because Plaintiff filmed Mr. Takay for his *own* safety during an aggressive incident with Mr. Takay.

d. In fact, after Plaintiff was terminated, Plaintiff was not even afforded an opportunity to appeal his termination as Defendant made it nearly impossible to comply with meeting times and scheduling.

   e. Defendant, it appears, viewed Plaintiff as an "aggressive white person" instead of focusing on the real aggressor.

49. The above actions by Defendant clearly establish a prima facie case of discrimination based on race.

50. Therefore, Plaintiff meets the elements outlined in *McDonnell Douglas Corp. v. Green* to establish a claim under 42 U.S.C. § 2000e-2(a)(1).

### b. <u>SECOND CAUSE OF ACTION</u>
(Retaliation)

51. To establish a prima facie case of retaliation in a retaliatory discharge case, it must be shown that: (1) the plaintiff engaged in a protected activity; (2) the employer took adverse action; and (3) there existed a causal connection between the protected activity and the adverse action Brewer v. Cabarrus Plastics, Inc., 130 N.C. App. 681, 682.

52. Here, Plaintiffs claim succeeds as making a *prima facie* case for retaliation:

   a. Plaintiff engaged in a protected activity within the meaning of Title VII where Plaintiff complained to Defendant (HR) about race discrimination regarding being called an "aggressive white person" by one of Defendant's managers.

   b. Plaintiff also made complaints about a black co-worker targeting him.

   c. Employer took adverse employment action: Instead of remedy the situation, Defendant did nothing to correct the activity, and instead, allowed Defendant's managers and the employee to continue working undisciplined.

- 9 -

Case 3:24-cv-00377   Document 1   Filed 04/10/24   Page 9 of 11

    d. Plaintiff was then terminated, and when Plaintiff complained about his termination, Plaintiff was further retaliated against by not being afforded the ability to appeal the termination, even though offered by Defendant.

    e. Defendant made it nearly impossible to comply with meeting times and scheduling to allow for an appeal to move forward.

    f. For example, Defendant scheduled the appeal hearing for September 5 at 5PM. The hearing was then moved to September 9 at 2PM. Then, on September 8, Plaintiff received a notice that he forfeited his appeal rights by missing the appointment. Then, Plaintiff received a notice that he missed a September 5 hearing and also forfeited his appeal. When Plaintiff complaint further, Defendant instructed Plaintiff to "file an HR ticket." An appeal hearing was ultimately never given.

    g. These actions by Defendant are clearly connected: Defendant wanted Plaintiff to stop complaining and quietly be terminated.

53. In sum, the sole purpose of Defendant's actions was to discourage Plaintiff from continuing to complain.

## IV. CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in the amount of $300,000; the maximum allowable under federal law.

2. Order Defendant to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendant's discriminatory practices.

3. Grant such relief as the Court deems necessary and proper in the public interest; and

4. Award Plaintiff his attorney's fees and costs of this action pursuant to Title VII of the Civil Rights Act of 1964.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

Respectfully submitted this, the 10th day of April, 2024.

s/s Lucas F. Colantonio
N.C. State Bar No. 60818
colantoniolawfirm@gmail.com
The Law Offices of Lucas F. Colantonio PLLC
10520 Chapel Hill Rd. 904
Morrisville, NC 27560
Telephone: (919) 701-9664
*Attorney for Plaintiff*
